UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TERRANCE DIXON,

                Plaintiff,            **MEMORANDUM AND ORDER**
                                                            22-CV-3581 (RPK) (LB)
      v.

EMILY STEDMAN, ROSS ANDERSON,
FRANCIS LOCOCO, and HUSCH
BLACKWELL LLP,

                Defendants.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

        Defendants move to dismiss *pro se* plaintiff Terrance Dixon's complaint for insufficient service of process and lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2) and (5). For the reasons explained below, plaintiff has made a *prima facie* showing that personal jurisdiction exists over all named defendants. But because plaintiff has not properly served any defendant and the Court declines to further extend the time to effect proper service, the complaint is dismissed without prejudice under Federal Rule of Civil Procedure 4(m).

## BACKGROUND

        This suit arises out of a dispute between plaintiff and PayPal, Inc., concerning allegedly fraudulent transactions in plaintiff's PayPal account. *See* Compl. ¶¶ 5, 6, 8 (Dkt. #1-1). That dispute led to an arbitration proceeding between plaintiff and PayPal; and the defendants in this case are the attorneys who represented PayPal in that arbitration—Emily Stedman, Ross Anderson, and Francis LoCoco—as well as their law firm, Husch Blackwell LLP. *Id.* at ¶¶ 2–3, 10–11. Plaintiff's complaint, originally filed in New York state court, raises claims of breach of fiduciary duty, tortious interference with contract, abuse of legal process, and negligent misrepresentation, all arising from defendants' conduct during those arbitration proceedings, *id.* at ¶¶ 12–38, which

1

plaintiff asserts "took place in New York." Pl.'s Resp. to 1/12/2023 Court Order 3 (Dkt. #41) ("Pl.'s Show Cause Resp."). Defendants Stedman and Anderson received copies of plaintiff's complaint via mail in Wisconsin—Stedman at both her home address and work address, *see* Decl. of Emily Stedman ¶¶ 6–7 (Dkt. #8-1) ("Stedman Decl."), and Anderson at his work address only, *see* Decl. of Ross Anderson ¶ 16 (Dkt. #8-3) ("Anderson Decl."). Defendant LoCoco attests that he never received a copy of the complaint. *See* Decl. of Francis LoCoco ¶ 7 (Dkt. #8-2) ("LoCoco Decl.").

Defendants removed the case to federal court, *see* Not. of Removal (Dkt. #1), and subsequently filed this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), *see* Mot. to Dismiss (Dkt. #8).

## DISCUSSION

Defendants assert that service of process was insufficient under New York law and that this Court lacks personal jurisdiction over them. I conclude that plaintiff has carried his burden of establishing personal jurisdiction, but that plaintiff has failed to effectuate adequate service on any defendant. Accordingly, the complaint is dismissed without prejudice.

### I. Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction exists, *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003), and the Court "may consider materials outside the pleadings," *Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir. 2019); *see Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 245 n.1 (S.D.N.Y. 2020) (noting that a court evaluating a Rule 12(b)(2) motion "may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials"). Prior to discovery, "a plaintiff is required only to make a *prima facie* showing by pleadings and affidavits

2

that [personal] jurisdiction exists." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996); *see Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013). In this posture, the Court construes all pleadings and affidavits in the light most favorable to the plaintiff and resolves all doubts in his favor. *Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).

Under Federal Rule of Civil Procedure 4(k)(1)(A), "[w]ith exceptions not relevant here, a district court sitting in a diversity action such as this may exercise personal jurisdiction to the same extent as the courts of general jurisdiction of the state in which it sits." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez* (*Bank Brussels II*), 305 F.3d 120, 124 (2d Cir. 2002); *see Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). A federal court in New York must therefore engage in "a two-step analysis" to determine whether personal jurisdiction exists in a diversity suit. *Bank Brussels II*, 305 F.3d at 124. First, the court must determine if New York statutes would confer jurisdiction over the defendant. *Ibid.* Then, "[i]f there is a statutory basis for jurisdiction," a court should ascertain "whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment." *Ibid.* A plaintiff can establish jurisdiction over a defendant based on either "general" or "specific" jurisdiction. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). "General jurisdiction . . . permits a court to adjudicate any cause of action against the . . . defendant, wherever arising, and whoever the plaintiff," while "[s]pecific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state." *Ibid.*

As explained below, plaintiff has made a *prima facie* showing that specific personal jurisdiction exists over defendants in this case. Accordingly, I do not consider whether general personal jurisdiction exists over any of the defendants.

### A. Specific Personal Jurisdiction Exists over the Individual Defendants

1. <u>Statutory Basis for Jurisdiction</u>

Specific jurisdiction in New York is governed by New York Civil Practice Law and Rules Section 302, which provides in part that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . [1] transacts any business within the state or [2] contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). This provision "has two prongs, either of which can form a basis for the exercise of personal jurisdiction over a non-domiciliary." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez* (*Bank Brussels I*), 171 F.3d 779, 786 (2d Cir. 1999). In addition to satisfying one of those two prongs, a plaintiff asserting jurisdiction under Section 302(a)(1) must also show that "the claim asserted . . . arise[s] from th[e New York] business activity." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (citation and quotation marks omitted).

As to the first requirement, "[t]o determine whether a party has 'transacted business' in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state." *Bank Brussels I*, 171 F.3d at 787. "A single transaction would be sufficient to fulfill this requirement . . . so long as the relevant cause of action also arises from that transaction." *Ibid.* (quotation marks and citations omitted). What is more, "one need not be physically present" in New York to satisfy this test, because "in this day of instant long-range communications, one can engage in extensive purposeful activity [in New York] without setting foot in the State." *Id.* at 788 (citing *Parke-Bernet Galleries, Inc. v. Franklyn*, 256 N.E.2d 506, 508 (N.Y. 1970) (holding that a defendant who, while outside of New York, "receiv[ed] and transmitt[ed] bids over an open telephone line and was an active participant in an auction held [in New York]" had transacted business within the state)). The ultimate question is whether the party

4

has "purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *Id.* at 787 (citation omitted).

"[T]he 'arising from' prong of section 302(a)(1)," meanwhile, "does not require a causal link between the defendant's New York business activity and a plaintiff's injury," but it *does* "require[] a relatedness between the [forum-state] transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Licci*, 732 F.3d at 168–69 (quotation marks omitted). That inquiry requires looking to "the nature and elements of the particular causes of action pleaded" to see whether "at least one element arises from the [defendants'] New York contacts." *Id.* at 169 (citation omitted).

Plaintiff has made a *prima facie* showing that specific personal jurisdiction over the individual defendants exists under Section 302(a)(1). Plaintiff alleges that defendants committed several torts all in connection with an arbitration proceeding that "took place in New York." Pl.'s Show Cause Resp. 2–3. Specifically, the complaint alleges that defendant Stedman filed "a notice of appearance" on behalf of PayPal in the arbitration proceeding concerning the allegedly fraudulent proceedings, and that the defendants, among other things, collectively "abuse[d] . . . the litigation system," "maliciously misrepresented material facts detrimental to the outcome of the proceedings," "attempt[ed] to find legal loopholes and use litigation tactics to conceal [Paypal's] fraud," selected a biased arbitrator "solely to defraud and give a disadvantage to the plaintiff," threatened plaintiff by filing a frivolous counterclaim, intentionally delayed the arbitration, withheld evidence from the arbitration, "maliciously committed perjury," and "attempted to induce settlement through negligently misrepresented material facts." Compl. ¶¶ 11, 14, 16, 18, 23, 27–30, 35–36. For their part, defendants concede that all the "actions" of which plaintiff complains were "taken in defense of [their] client" in the arbitration proceeding plaintiff mentions, Mot. to Dismiss 1, and while they observe that "the arbitration was conducted remotely"—seemingly due

to COVID—they do not appear to contest plaintiff's assertion that, despite this fact, the arbitration took place in New York for purposes of the jurisdictional analysis here, *see* Defs.' Resp. to 1/12/23 Court Order 4 (Dkt. #42) ("Defs.' Show Cause Resp.") ("The arbitrator was selected from arbitrators located in New York, and Defendants believe the arbitrator was located in New York during the remote proceedings."). Nor do they argue that the Court may not consider plaintiff's assertion, made for the first time in his response to an order to show cause on a separate issue, that the proceedings indeed occurred in New York. *See ibid.*

These allegations suffice to make a *prima facie* showing that the individual defendants transacted business in New York within the meaning of Section 302(a)(1). In *Bank Brussels I*, the Second Circuit held that Section 302(a)(1) could not support personal jurisdiction over a Puerto Rican law firm, Fiddler Gonzalez, that had provided ancillary services (relating to the validity of a security interest located in Puerto Rico) in connection with a loan transaction that occurred in New York. 171 F.3d at 786–89. The Court noted that while Fiddler had "communicated with plaintiff in New York by phone, fax and possibly mail . . . . in none of these communications did Fiddler . . . project itself into New York to participate in any activities localized in the state or to represent [any parties] during any New York transactions." *Id.* at 788. The individual defendants in this case, by contrast, *did* take steps to "project [themselves] into New York," *ibid.*, when they accepted representation of PayPal in a New York arbitration proceeding and appeared in that New York proceeding to defend their client's interests. *See, e.g.*, *Liberatore v. Calvino*, 742 N.Y.S.2d 291, 293 (App. Div. 2002) (holding that a Rhode Island lawyer who performed all of his work out of state was subject to New York jurisdiction because "he projected himself into the State to perform services by contracting with plaintiff to legally represent her here for purposes of obtaining a favorable settlement of her New York personal injury claim from New York tortfeasors in accordance with New York law"); *Schur v. Porter*, 712 F. Supp. 1140, 1145 (S.D.N.Y. 1989)

(holding that where a lawyer "agreed to and did supply [legal] services in New York for a New York business transaction," jurisdiction existed under Section 302(a)(1) because "[i]t [wa]s fair and reasonable for [the lawyer] to have expected to defend these services in a New York court"); *compare E-Z Bowz, L.L.C. v. Pro. Prod. Rsch. Co.,* No. 00-CV-8670 (LTS) (GWG), 2003 WL 22064259, at *8 (S.D.N.Y. Sept. 5, 2003) (finding no jurisdiction under Section 302(a)(1) where the lawyer's only contact with New York was "appear[ing in] and participat[ing] in a lawsuit originally filed in another jurisdiction (and brought on behalf of a foreign client)" but "subsequently transferred" to New York), *report and recommendation adopted*, 2005 WL 535065, at *16 (S.D.N.Y. Mar. 8, 2005). By undertaking this representation, defendants "purposely availed [themselves] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *Bank Brussels I*, 171 F.3d at 787.

With the transaction-of-business prong of Section 302(a)(1) satisfied, the rest of the statutory analysis is straightforward. All of plaintiff's claims "arise from" the individual defendants' New York "business activity"—their representation of PayPal in the underlying arbitration proceeding. *Licci*, 732 F.3d at 168. Accordingly, personal jurisdiction over the individual defendants is proper under Section 302(a)(1).

    2. Due Process Considerations

Personal jurisdiction over the individual defendants on this basis likewise comports with the Due Process Clause. *See Bank Brussels II*, 305 F.3d at 124.

Under the Due Process Clause, a State may exercise personal jurisdiction over a defendant only if the defendant has such "minimum contacts" with the State that the lawsuit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). A defendant has the requisite minimum contacts with a State so long as she "purposefully avail[ed] [her]self of the privilege of conducting activities" within

7

that State, "thus invoking the benefits and protections of its laws, . . . such that [the defendant] should reasonably anticipate being haled into court there." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007) (quotation marks and citations omitted); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (holding that the Due Process Clause allows a State to exercise specific jurisdiction over a controversy that "is related to or arises out of a defendant's contacts with the forum") (quotation marks omitted).

In New York, "except in rare cases," the questions of whether the long-arm statute permits personal jurisdiction and whether personal jurisdiction comports with due process "yield the same result." *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 273 (S.D.N.Y. 2019); *see Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (same). Defendants make no argument that this is one of those rare cases, invoking the Due Process Clause only in a footnote in their opening brief, and then only to say that minimum contacts do not exist "[f]or the same reasons" that jurisdiction is improper "under both C.P.L.R. § 301 and § 302" and that "exercising personal jurisdiction . . . would violate traditional notions of fair play and substantial justice because of the significant burden on the [d]efendants of having to litigate in a New York forum." Mot. to Dismiss 9 n.8. Defendants thus appear to concede that a finding of jurisdiction under Section 302(a)(1) implies a finding of minimum contacts sufficient to satisfy due process. And their argument that exercising jurisdiction would offend traditional notions of fair play and substantial justice, which does not engage with the multifactor inquiry governing this determination, *see Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996), is "so underdeveloped that the Court deems it waived," *Molina v. Faust Goetz Schenker & Blee, LLP*, 230 F. Supp. 3d 279, 287 n.39 (S.D.N.Y. 2017).

In any event, jurisdiction in New York comports with due process because, for the reasons explained above, *see* pp. 5–7, *supra*, defendants purposely availed themselves of the protections

8

of New York law by projecting themselves into the State when they represented PayPal in the New York arbitration proceeding. Accordingly, defendants could reasonably expect to be haled into New York court to defend claims arising from their provision of services in that matter. *See Schur*, 712 F. Supp. at 1145 ("It is fair and reasonable for [a lawyer who provides services in connection with a New York matter] to . . . expect[] to defend these services in a New York court."); *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740, 743 (2d Cir. 2020) ("Where," as here, plaintiff's "claim arises out of, or relates to, the defendant's contacts with the forum—*i.e.*, specific jurisdiction—minimum contacts exist," and thus due process is satisfied, "where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.") (quoting *Bank Brussels II*, 305 F.3d at 127).

B.  *Specific Personal Jurisdiction Exists over Husch Blackwell LLP*

Plaintiff has likewise made a *prima facie* showing that the exercise of specific personal jurisdiction over defendant Husch Blackwell is proper. Under New York law, specific personal jurisdiction over a partnership may arise "either because of the partnership's activities as a whole or the actions of a single partner acting on behalf of the partnership." *Afloat in France, Inc. v. Bancroft Cruises Ltd.*, No. 03-CV-917 (SAS), 2003 WL 22400213, at *5 (S.D.N.Y. Oct. 21, 2003). "This is so because under New York law, a partner is an agent of . . . the partnership," *ibid.* (citing *Durkin v. Shea*, 957 F. Supp. 1360, 1366–67 (S.D.N.Y. 1997)), and Section 302(a)(1) applies equally to parties who satisfy the jurisdictional requirements "through [the actions of] an agent," N.Y. C.P.L.R. § 302(a). Defendants concede that defendant LoCoco—though not defendants Stedman or Anderson—"is a partner of Husch Blackwell LLP." Defs.' Show Cause Resp. 4. So, having found that defendant LoCoco's forum-state activities on behalf of Husch Blackwell satisfy Section 302(a)(1), *see* pp. 5–7, *supra*, specific personal jurisdiction exists over the firm under that same provision.

9

## II. Sufficiency of Service of Process

While plaintiff has adequately alleged that defendants are subject to this Court's personal jurisdiction, for the reasons explained below, plaintiff has not adequately served defendants with process as required under New York law. Accordingly, because the Court declines to grant plaintiff a *nunc pro tunc* extension of time to effectuate service, the case is dismissed without prejudice to refiling.

### A. Plaintiff Did Not Properly Serve Defendants

"Although the Federal Rules of Civil Procedure apply to actions after removal, 'state law governs the sufficiency of service of process *before* removal.'" *Mecca v. Lennon*, No. 16-CV-1414 (LDW) (ARL), 2017 WL 1410790, at *3 (E.D.N.Y. Apr. 18, 2017) (quoting *G.G.G. Pizza, Inc. v. Domino's Pizza, Inc.*, 67 F. Supp. 2d 99, 102 (E.D.N.Y. 1999)) (emphasis in *Mecca*). Accordingly, because plaintiff attempted to serve defendants prior to removal, New York law governs defendants' claim that service was inadequate. *See ibid.*

N.Y. C.P.L.R. § 313 provides that a defendant who is "subject to the jurisdiction of the courts of the state under section 301 or 302 . . . may be served with the summons without the state, in the same manner as service is made within the state." This provision "removes state lines" and authorizes a plaintiff "to use the service methodologies" authorized for in-state service "wherever the defendant (or person authorized to accept service on defendant's behalf) may be found." Vincent C. Alexander, N.Y. C.P.L.R. § 313, Practice Commentaries (quotation marks and brackets omitted). The provisions setting out the applicable requirements for service are Section 308 for the individual defendants and Sections 310 and 310-a for Husch Blackwell. Under these provisions, plaintiff's efforts at serving defendants were insufficient.

10

1. Individual Defendants

Plaintiff did not properly serve any of the individual defendants. N.Y. C.P.L.R. § 308 provides that "[p]ersonal service upon a natural person shall be made" either by (1) "delivering the summons . . . to the person to be served" or (2) "delivering the summons . . . to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served *and* by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business." N.Y. C.P.L.R. § 308(1)–(2) (emphasis added). Both provisions "require[] personal service" of some kind, "so service by mail [alone] [i]s insufficient." *Ivey v. City of Albany*, No. 21-CV-0684 (LEK) (CFH), 2022 WL 4549468, at *7 (N.D.N.Y. Sept. 29, 2022) (footnote omitted). Because plaintiff served defendants Stedman and Anderson by mail only, *see* Stedman Decl. ¶¶ 6–7; Anderson Decl. ¶ 16, and appears not to have served defendant LoCoco at all, *see* LoCoco Decl. ¶ 6, plaintiff has not satisfied the requirements for service of process under Section 308 with respect to the individual defendants.

2. Husch Blackwell LLP

Nor did plaintiff properly effectuate service on Husch Blackwell. Section 310(a), which applies to partnerships generally, provides that service on a partnership "may be made by personally serving the summons upon any [partner]," N.Y. C.P.L.R. § 310(a), a requirement plaintiff has not satisfied here for the reasons just discussed. Section 310-a, meanwhile, applies specifically to limited liability partnerships like Husch Blackwell, and provides for service "by delivering a copy personally to," among other options, "any . . . person designated by the limited partnership to receive process." N.Y. C.P.L.R. § 310-a(a).

Plaintiff has not satisfied those requirements. In his response in opposition to defendants' motion to dismiss, plaintiff asserts that he completed service both because (1) on an unspecified

11

date, plaintiff served the agency registered with the New York Secretary of State to receive service of process on Husch Blackwell's behalf "by email," and (2) on July 15, 2022, a process server served a receptionist named "Chris," who plaintiff describes as "an authorized recipient," at an office building in New York that plaintiff asserts "is known to be" an office of Husch Blackwell and its attorney in this case, Matthew Sarles. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss 11 (Dkt. #19) ("Pl.'s Opp'n"). But service by email is not personal service within the meaning of Section 310-a. *Cf. Ivey*, WL 4549468, at *7. And as for the personal service on "Chris," defendants assert that "[t]he receptionist Chris was not appointed or designated by Husch Blackwell LLP to receive service for Husch Blackwell LLP." Decl. of Matthew Sarles ¶ 3 (Dkt. #42-2) ("Sarles Decl."). What is more, the papers served upon Chris—a motion by plaintiff to revoke defendants' *pro hac vice* admission status and a copy of an amended complaint—did not include a summons, *see* Sarles Decl. ¶ 3, a necessary predicate to adequate service under New York law. *See* N.Y. C.P.L.R. § 306-b ("Service of *the summons and complaint* . . . shall be made within one hundred twenty days after the commencement of the action or proceeding.") (emphasis added); N.Y. C.P.L.R. § 308(1) ("Personal service upon a natural person shall be made by . . . delivering *the summons* within the state.") (emphasis added); N.Y. C.P.L.R. § 310-a(a) (incorporating Section 308's requirements for service). Accordingly, even if Chris were Husch Blackwell's agent for service of process, service was insufficient to confer personal jurisdiction under Section 310-a(a).

B. *An Extension of the Time to Serve Defendants Is Not Warranted*

Plaintiff requests that, if service was not properly effectuated, he be granted an extension of the time to complete service under Federal Rule of Civil Procedure 4(m). *See* Pl.'s Opp'n 8–9. I decline to extend plaintiff's time to serve defendants.

1. Good Cause

If a plaintiff shows "good cause for the failure" to meet the Rule 4(m) service requirements, then "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond [plaintiff's] control." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 597 (E.D.N.Y. 2013) (citation and quotation marks omitted). In determining whether good cause exists, courts consider "(1) the diligence and reasonableness of the plaintiff's efforts to serve, and (2) prejudice to the defendants from the delay." *Tolchin v. Cnty. of Nassau*, 322 F. Supp. 3d 307, 311 (E.D.N.Y. 2018), *aff'd*, 768 F. App'x 60 (2d Cir. 2019).

Plaintiff has not shown good cause here. He has not set out exceptional circumstances beyond his control that caused his attempts at service to fail. *See Jordan*, 928 F. Supp. 2d at 598. And while plaintiff no doubt attempted to effectuate service, as explained above, *see* pp. 11–12, *supra*, his attempts to do so did not satisfy the requirements of New York law, and "[a] mistaken belief that service was proper is not good cause under Rule 4(m)." *Fowler v. City of New York*, No. 13-CV-2372 (KAM) (RML), 2015 WL 9462097, at *5 (E.D.N.Y. Dec. 23, 2015) (citation and quotation marks omitted), *aff'd*, 807 F. App'x 137 (2d Cir. 2020); *see, e.g.*, *Yaxin Jing v. Angel Tips, Inc.*, No. 11-CV-5073 (RRM) (JMA), 2013 WL 950585, at *3 (E.D.N.Y. Mar. 11, 2013); *Obot v. Citibank S. Dakota, N.A.*, No. 04-CV-784A (RJA), 2006 WL 6905256, at *2–3 (W.D.N.Y. Oct. 17, 2006), *aff'd*, 347 F. App'x 658 (2d Cir. 2009). Plaintiff has not identified any circumstances beyond his control that prevented him from complying with the personal service requirements of Sections 308, 310, and 310-a.

2. Discretionary Extension

"[A] district court *may* grant an extension in the absence of good cause, but it is not required to do so." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007); *see Counter Terrorist Grp. U.S. v. N.Y. Mag.*, 374 F. App'x 233, 234–35 (2d Cir. 2010). To benefit from a discretionary extension, "the plaintiff must ordinarily advance some colorable excuse for neglect." *Zapata*, 502 F.3d at 198. At that point, "courts in this Circuit generally consider four factors: (1) whether any applicable statutes of limitations would bar the action once re-filed; (2) whether the defendant[s] had actual notice of the claims asserted in the complaint; (3) whether defendant[s] attempted to conceal the defect in service; and (4) whether defendant[s] would be prejudiced by extending plaintiff's time for service." *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 420 (S.D.N.Y. 2013) (citation and quotation marks omitted).

Here, I decline to exercise my discretion to grant an extension without good cause because plaintiff has not offered a colorable excuse for his neglect. *Cf. Zapata*, 502 F.3d at 199 (affirming denial of extension of time to serve where plaintiff "neglected to ask for an extension within a reasonable period of time, and ha[d] advanced no cognizable excuse for the delay"). "[U]nlike the plaintiff in *Zapata*, who ultimately served the defendants only four days beyond the service deadline, plaintiff here *never* effected proper service on the defendants," even though he has been on notice of the potentially deficient service for many months. *Carl v. City of Yonkers*, No. 04-CV-7031 (SCR), 2008 WL 5272722, at *7 (S.D.N.Y. Dec. 18, 2008) (emphasis in original) (declining to extend time to serve because plaintiff's *pro se* attempt at service was unsuccessful, plaintiff "made no further effort" to serve defendants, and plaintiff failed to seek any extension of time), *aff'd*, 348 F. App'x 599 (2d Cir. 2009); *see, e.g.*, *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 508–09 (2d Cir. 2006); *Fried v. New York State Off. of Child. & Fam. Servs.*, No. 05-CV-5522 (NGG) (AKT), 2008 WL 4360749, at *6 (E.D.N.Y. Sept. 24, 2008). Moreover, plaintiff has

14

not argued or provided evidence that the *Vaher* factors are satisfied. *See* Pl.'s Opp'n 8–11; *Emanuele v. Ranch for Kids, Inc.*, No. 17-CV-6426 (NGG) (SJB), 2018 WL 2248514, at *2 (E.D.N.Y. Apr. 27, 2018) (recommending dismissal based on insufficient service of process where plaintiff did not argue or provide evidence that the factors supporting an extension were satisfied), *report and recommendation adopted*, 2018 WL 2248509 (E.D.N.Y. May 16, 2018). Considering the factors commonly weighed in deciding whether to grant a discretionary extension, I decline to extend plaintiff's time to serve.

## CONCLUSION

Defendants' motion to dismiss based on insufficient service of process is granted. The complaint is accordingly dismissed without prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, so *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

                                                                 */s/ Rachel Kovner*
                                                                  RACHEL P. KOVNER
                                                                  United States District Judge

Dated: March 30, 2023
       Brooklyn, New York